**THE DISTRICT OF GUAM**

ROBERT JAY MARKS,

Plaintiff,

vs.

LARS FILIP HELLMONT, DR. DEIDER NEUPER, as Trustee for BH Stiftung, and FUJITA PROPERTY GUAM, INC.,

Defendant.

CIVIL CASE NO. 19-000142

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

This matter is before the court on Defendant Fujita Property Guam, Inc.'s motion to dismiss Plaintiff Robert Marks's Amended Complaint. Def.'s Mot. to Dismiss, ECF No. 37. For the following reasons, the court **DENIES** the motion and **REMANDS** the case to the Superior Court of Guam.

## I. Factual Background and Procedural History

### A. Superior Court of Guam Proceedings

This case arises from an employment contract dispute between Plaintiff Robert Mark, a Guam citizen, and Defendant Lars Hellmont, a citizen of Sweden and the United States. Pl.'s Am. Compl. ¶¶ 1-3, ECF No. 20. In early 2014, Lars was working on behalf of BH Stiftung (BH Trust), a Switzerland-based trust. *Id.* ¶¶ 7, 55. On March 13, 2014, Lars sent an email (the "Original Agreement") to Marks, purportedly offering Marks employment as the "administrator of the trust and its two affiliated Foundations." *Id.* Ex. A. The Original Agreement was addressed to "Mr. Robert Marks, C/O Fujita Property Guam Inc." and the signature line at the bottom listed Lars as "Trustee, BH Trust." *Id.* Under the terms of the agreement, Marks would start working

on May 15, 2014 and would receive an $80,000.00 signing bonus with an $825,000.00 salary for two years. *Id.*

Marks moved to Guam and provided his "professional and business executive management services" to Defendants[1] for several years; however, Marks alleges he was never paid. *Id.* ¶¶ 9-12, 17-19. Marks complained several times to Lars, but Lars provided excuses and requested extensions for payment. For example, Lars told Marks he would have to see if he could "release Zurich [sic] funds or advance on the Zurich payment first prior to get together and sign in a non-taxable [sic] jurisdiction" or that Marks should be patient because Lars could "only push so hard with the Trust Administrator." *Id.* ¶¶ 17-21.

Endeavoring to collect on his compensation, Marks allegedly committed Lars to pay $1.6 million to satisfy the terms of the Original Agreement (the "Substitute Agreement") in December 2016. *Id.* ¶ 22. Seeking additional security, Marks sent Lars two draft promissory notes on January 28, 2019 requesting payment under the Substitute Agreement. *Id.* ¶¶ 23-26.

By June of 2019, no payment had occurred under the Original Agreement, the Substitute Agreement, or the promissory notes, and Marks finally raised the possibility of litigation with Lars. *Id.* at ¶¶ 26-28. Asking Marks to hold off on a lawsuit to see if they could "try to settle without lawyers," Lars exchanged proposed settlement documents with Marks on June 10, 2019. *Id.* at ¶¶ 29-34. These negotiations fell through, and on September 11, 2019, Marks filed a lawsuit in Superior Court of Guam, naming Lars and Dr. Deider Neuper[2] as Defendants. *See* Pl.'s Compl., ECF No. 1 at 4-7.

---

[1] The Amended Complaint (ECF No. 20) lumps Defendant Lars Hellmont, Defendant Deider Neuper, and Defendant Fujita Property Guam, Inc. together and refers to them collectively as "LARS." The name "Lars" as used in this Order represents Defendant Lars Hellmont in his individual capacity.

[2] The settlement documents list Defendant Dr. Deider Neuper as Trustee of BH Trust. Pl.'s Am. Compl. ¶ 30. However, the parties have been unable to locate Defendant Neuper, and Lars disavows any knowledge of his location. *Id.* ¶ 35.

B. Removal and Joinder of Defendant Fujita

On October 11, 2019, Lars removed the matter to this court pursuant to 28 U.S.C. § 1446 on the basis of diversity jurisdiction. *See* Notice of Removal, ECF No. 1. On June 19, 2020, Plaintiff filed an Amended Complaint and joined Defendant Fujita Property Guam, Inc. Pl's Am. Compl., ECF No. 20.

C. Fraudulent Joinder and Fujita's Motion to Dismiss

Fujita Property Guam, Inc., is a real estate management and development company incorporated in Guam with head offices in Guam; consequently, Fujita's presence destroys complete diversity in this case. *See id.* ¶ 5. After the joinder of a non-diverse defendant in a removed diversity case, "the district court has two options…the court may deny joinder, or permit joinder and remand the action to the State court." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (internal citations omitted).

However, shortly after its joinder, Fujita filed a motion to dismiss the claims against Fujita under the doctrine of "fraudulent joinder." Def.'s Mot. to Dismiss, ECF No. 37. Fujita argues there is no possibility that Marks can recover from Fujita, and thus Marks fraudulently joined Fujita to force the case back to the Superior Court of Guam; consequently, the court should ignore Fujita's citizenship for purposes of this lawsuit. On the other hand, Marks argues the Amended Complaint adequately shows he may possibly recover against Fujita. To bolster his argument, Marks has filed three motions seeking to supplement the record with new documents recently obtained in discovery. On March 3, 2021, the court granted Marks's first and second motions to supplement and allowed Fujita to file a sur-reply. ECF No. 107. Marks filed a third motion to supplement on February 17, 2021, which remains pending. ECF No. 98.

**II. Discussion**

A. Legal Standard

Under the doctrine of fraudulent joinder, "[a] district court may disregard a non-diverse

party named in the state court complaint and retain federal jurisdiction if the non-diverse party is joined as a sham or if the joinder is fraudulent." *Plute v. Roadway Package System, Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). Joinder is fraudulent when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state…". *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

On the other hand, "[i]f there is doubt as to whether plaintiff[s] have stated a cause of action, the joinder is not fraudulent, and the case should be remanded." *Parks v. New York Times Company*, 308 F.2d 474, 478 (5th Cir.1962). Stated another way, "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (internal quotations omitted). The bar is high; "[t]here is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Nishimoto v. Federman–Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990). It requires "a near certainty" that joinder of the party was fraudulent. *Lewis v. Time, Inc.*, 83 F.R.D. 455, 466 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983).

In analyzing whether a plaintiff's case presents a possibility of recovery against a defendant, the court may go "somewhat further" than the pleadings as "[t]he defendant [] is entitled to present the facts showing the joinder to be fraudulent." *Ritchey*, 139 F.3d at 1318. A court may consider affidavits or other evidence to determine if the joinder was a sham, including the consideration of "summary judgment-type evidence such as affidavits and deposition testimony." *Morris*, 236 F.3d at 1068 (internal quotations omitted). Despite the consideration of "summary judgment-type evidence," the court is to only engage in a "summary inquiry [] appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 1044. Furthermore, "the inability to

make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.* "[A]ll disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." *Plute*, 141 F. Supp. 2d at 1008.

While the "fraudulent joinder standard shares some similarities with the analysis under Rule 12(b)(6)…the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent." *Grancare*, 889 F.3d at 549. Fraudulent joinder is a "jurisdictional inquiry" and not an "adjudication on the merits" and is more akin to the "wholly insubstantial and frivolous" standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *Id.* While a Rule 12(b)(6) motion analyzes the sufficiency of a claim, fraudulent joinder analyzes the viability of the claim; "arguments [that] go to the sufficiency of the complaint, rather than to the possible viability of [] claims [] do not establish fraudulent joinder." *Id.* at 552. Moreover, "[a]ll doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand" and a "lack of clear precedent does not render the joinder fraudulent." *Plute*, 141 F. Supp. 2d at 1008 (referencing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992)).

**B. Analysis**

The framework above requires the court to analyze the current record to determine whether Marks has any possible chance of succeeding against Fujita on his claims in the Amended Complaint, which assert eight violations of Guam law.[3] Fujita presents three main arguments for why Marks has no possibility of recover on any of the claims presented in the Amended Complaint: (1) Fujita was not a party to any contract at all, and thus cannot be held

[3] The Amended Complaint lists eight causes of action under Guam law: (1) breach of contract for the Original Agreement, (2) breach of the covenant of good faith and fair dealing for the Original Agreement, (3) breach of contract for the Substitute Agreement, (4) breach of the covenant of good faith and fair dealing for the Substitute Agreement, (5) fraud in the inducement for the Original Agreement, (6) fraud in the performance for the Original Agreement, (7) fraud in the inducement for the Substitute Agreement, (8) and fraud in the performance for the Substitute Agreement.

liable for any breach; (2) the claims alleging fraud are not pled with sufficient particularity; and (3) the Guam statute of limitations for claims based in contract has run.

1. Fujita as a non-party (applicable to Counts I-IV of the Amended Complaint).

In Guam, a party may only be held liable for a breach of contract if it was a party to that contract. *See Hemlani v. Hemlani*, 2015 Guam 16, ¶ 19 (Guam Apr. 29, 2015). Fujita contends the record shows it was never a party to any employment contract with Marks. Fujita's name never appeared in any of the communications between Lars and Marks, and Fujita was not a signatory on any of documents that the two exchanged. Additionally, Lars never was an officer or director[4] of Fujita from 2012-2016 and consequently had no authority to bind Fujita; even if he had, there is no indication that Fujita ratified Lars's actions. Marks does not contest the facial validity of these points. Rather, he argues that Fujita could still be on the hook for the breach of the employment contract if Fujita was the "alter ego" of Lars.

Guam appears to have recognized the "alter ego doctrine" in *Guam Economic Development Authority v. Island Equipment Co., Inc.*, 1998 WL 270280, 1998 Guam 7 (May 28, 1998). In that case, Island Equipment, Inc. was attempting to enforce a consent judgment it had obtained against several parties, including an individual defendant named "Go." *Id.* at *1. During its attempts to enforce the judgment, Island Equipment discovered two things: (1) Go was the president of a corporation named RSG Philippines, and (2) Guam Visitor's Bureau (GVB) and Guam Economic Developmental Authority (GEDA) owed RSG money after RSG provided marketing and liaison services in the Philippines. *Id.* at *1. Island Equipment obtained a writ of execution ordering GEDA and GVB to pay the debt to satisfy the consent judgment against Go. *Id.* GEDA and GVB moved to quash the writ; the trial court denied the motion, finding that RSG

[4] Fujita filed a motion (ECF No. 39) asking the court to take judicial notice of the annual business reports for Fujita between 2012 and 2014 to establish that Lars was not an officer or director of record for Fujita. Under Rule 201 of the Federal Rules of Evidence, "[a] court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Consequently, the court takes judicial notice of these documents.

was the alter ego of Go. *Id.*

The Supreme Court of Guam upheld the trial court's denial of the motion to quash. It reasoned a corporate veil is pierced when "(1) that there is such a unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice." *Id.* at *4 (citing *Associated Ins. Underwriters, Inc. v. Guam Int'l Insurers, Inc.*, Civ. No. 90–00059A (D. Guam App. Div. 1991). Among other facts, the court noted that Go was the president of RSG and payments owed to RSG were transferred directly into accounts held in Go's name; consequently, there was "no separate identity between RSG" and Go, and thus "piercing the corporate veil was necessary to avoid a grave injustice and to prevent a fraud." *Id.* at *5

Other state courts applying the alter ego doctrine have recognized the analysis is a fact-dependent inquiry. For example, Californian courts have reasoned the analysis "encompasses a host of factors" including the following:

> commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses...; the treatment by an individual of the assets of the corporation as his own...; the holding out by an individual that he is personally liable for the debts of the corporation...; confusion of the records of the separate entities...; the identical equitable ownership in the two entities; the identification of the equitable owners thereof with the domination and control of the two entities; identification of the directors and officers of the two entities in the responsible supervision and management...; the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation...; the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities...; the disregard of legal formalities and the failure to maintain arm's length relationships among related entities...; the use of the corporate entity to procure labor, services or merchandise for another person or entity...; the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another...; the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability...; and the formation and use of a corporation to transfer to it the existing liability of another person or entity.

*Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811–12 (2010) (internal quotations omitted). Even "[t]his long list" is "not exhaustive"; the facts to be considered by a court depend on the "particular circumstances of each case.'" *Id.*

As this is usually a fact-intensive inquiry, any determination at this point would be preliminary as limited discovery has occurred. Regardless, the pleadings in this case allege incestuous business arrangements between continuously shifting shell companies, possibly effectuated to minimize tax liability and/or contractual obligations. The Amended Complaint, its attachments, and the exhibits attached to the briefing relating to the motion to dismiss establish the following:

- When Marks was hired, Fujita was majority-owned by a company named South North Guam, LLC. Pl.'s Am. Complaint ¶ 15, ECF No. 20.

- South North Guam, LLC, consisted of several members, including a company named South North Guam Management, LLC. *Id.* ¶ 16; Def's Req. for Judicial Notice Ex. B, ECF No. 39.

- South North Guam Management, LLC, itself was made up of at least one member: Defendant Lars Hellmont. Pl.'s Am. Complaint ¶ 16, ECF No. 20.

- In 2016, South North Guam, LLC, sold all its interest in Fujita to Prospector Properties. Def's Req. for Judicial Notice Ex. C, ECF No. 39.

Consequently, it would be difficult for the court to say, as a matter of law, that Marks's alter ego argument would obviously fail. Furthermore, the purported distinction between Fujita and Lars is not as clear as Fujita contends - Lars signed many documents representing himself as the Co-Owner, Managing Partner, or Owner of Fujita Property Guam, Inc. Decl. of Robert Jay Marks Ex. J, ECF No. 48 at 96-114.

The record also contains some evidence that Fujita may have been Marks's employer. The Original Agreement is addressed to Marks with "C/O FUJITA PROPERTY GUAM INC." named at the top, and Fujita Property Guam, Inc. is listed as the employer on Marks's health insurance card. Pl.'s Am. Compl. Ex. A & Ex. E, ECF

No. 20; Decl. of Robert Jay Marks Ex. A, ECF No. 48 at 4-5. In 2014, Lars was consistently emailing Fujita's secretary attempting to facilitate reimbursement to Marks, and Fujita's financial ledgers indicate that Fujita reimbursed Marks for traveling expenses. Decl. of Robert Jay Marks Ex. I, ECF No. 48 at 91-95.

In sum, the record reflects that Lars and Fujita were closer in practice than they were on paper. These facts alone make it possible that Lars was using Fujita as his alter ego, and if he was, it would be an injustice to allow Lars to hide behind the corporate veil to avoid his contractual obligations.

The affidavits and evidence provided in Marks's supplemental motions and Fujita's sur-reply only further underscore this possibility. Lars acted in Fujita's name in opposing the renaming of a road nearby the "ITC" building, a building managed by Fujita. Decl. of Pl.'s Counsel Ex. F, ECF No. 55 at 18-34. Furthermore, Lars exerted a large amount of control over Fujita's secretary who had access to Fujita's bank accounts. Decl. of Pl.'s Counsel ¶¶ 16-36, ECF No. 65 at 3-6. Lars currently appears to be the sole member of South North Guam, LLC, the entity that owned most of Fujita's shares prior to 2016. *Id.* ¶ 60. And despite Lars's problems complying with the court's discovery orders,[5] Lars provided a lengthy affidavit to Fujita wherein he admits not only that he previously had an 18 percent interest in Fujita, but that he was paid $9,000.00 a month by South North Guam Management, LLC, by way of Fujita Guam. Decl. of Lars Hellmont ¶¶ 8-9, ECF No. 82 at 17-21.

Fujita's other arguments are unavailing. For one, Fujita argues the merits of whether there was a contract at all. The Ninth Circuit has been clear on this point; when the determination requires the court to reach at the underlying merits, the issue is inappropriate for application of fraudulent joinder. Fujita also takes issue with the fact that the Amended Complaint does not

[5] The court granted two of Marks's motions to compel discovery from Lars and warned Lars that continued discovery delays would result in sanctions. ECF No. 93. Recently, Marks filed a motion seeking to hold Lars in contempt of the court's order for continued discovery violations. ECF No. 103.

specifically assert any alter ego theory of liability. However, this argument conflates the standards of fraudulent joinder and a Rule 12(b)(6) motion. The court is not to test the sufficiency of the complaint, but rather the viability of Marks's claims. Here, Guam has recognized the alter ego theory, and the present record indicates that Lars may have been using Fujita as an alter ego. Even if the Amended Complaint could not withstand a Rule 12(b)(6) motion, the application of fraudulent joinder is not automatically triggered, as " [t]he district court must consider [] whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *Grancare*, 889 F.3d at 550. If an amendment could repair the issue, remand is appropriate. *Id.* Here, Marks could conceivably seek leave to amend his complaint.

Whether Marks's claims will succeed down the road is irrelevant to the question of fraudulent joinder. As the court cannot find it "a near certainty" that Fujita is not a party to the contractual relationships described in the Amended Complaint, the court cannot find that Fujita was fraudulently joined. *Lewis*, 83 F.R.D. at 466.

2. <u>Particularity of the Amended Complaint (applicable to Counts IV – VIII)</u>

Several claims in the Amended Complaint allege fraud. Fujita argues that under the local and federal pleading rules, allegations of fraud must be pled with particularity. *See* Guam R. Civ. P. 9(b) and Fed. R. Civ. P. 9(b). Here, the Amended Complaint fails to do so, and thus Marks has no possibility of recovery against Fujita for the fraud claims.

As stated previously, direct attacks on the sufficiency of the Amended Complaint conflate the Rule 12(b)(6) standard with the fraudulent joinder standard. "If a defendant cannot withstand a Rule 12(b)(6) motion, the fraudulent inquiry does not end there. For example, the district court must consider, as it did in this case, whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *Grancare*, 889 F.3d at 550. Here, Marks possibly could seek leave to amend his complaint, making the issue inappropriate for the application of fraudulent joinder.

3. Statute of Limitations (applicable to all Counts)

Lastly, Fujita asserts that the statute of limitations has run for Marks's claims. The Guam statute of limitations for any action based in a written contract is four years, and three years for an action based in fraud. 7 GUAM CODE ANN. §§ 11303, 11305. Fujita argues the clock began ticking in May 2016, when Marks's two-year term of employment allegedly ended. As the Amended Complaint was not filed until June 19, 2020, the statute of limitations ran by the time the lawsuit was filed.

An affirmative defense, such as the statute of limitations, is normally not a reason to apply fraudulent joinder. *See Ritchey*, 139 F.3d at 1318. The Ninth Circuit has reasoned there "is a distinction" between the questions of whether there was a valid cause of action, and whether there was a defense to a valid cause of action, unless the defense concerns material elements of the underlying claim. *Id.*

Here, the statute of limitations is unrelated to the merits of Marks's claims, and thus does not affect the validity of those claims. Furthermore, Marks asserts in his Amended Complaint that all statutes of limitation should be equitably tolled. Equitable estoppel as applicable to a statute of limitations is recognized in Guam. *Bautista v. Torres*, 2020 Guam 28, ¶ 24 (Guam Dec. 29, 2020) (holding that a defendant is "estopped from asserting the statute of limitations as a bar to plaintiff's action if he has done anything that would tend to lull the plaintiff into inaction and thereby permit the statutory limitation to run against him.") (internal quotations omitted). Here, the record reflects several instances where Lars told Marks to be patient while he attempted to move funds around or that payment would be shortly forthcoming. Lars also expressly asked Marks to see if they could "settle without lawyers" which caused Marks to delay filing suit. ECF No. 20 at ¶ 33.

Once again, the court is not tasked today with determining whether the statute of limitations has run; all the fraudulent joinder analysis requires the court to perform a "summary

inquiry" to see if it is obvious the statute would prevent Marks from being successful on his claims. As Guam recognizes equitable tolling, and the record reflects that Lars may have lulled Marks into inaction, the court cannot conclude that Fujita's statute of limitations defense is so obviously applicable that Marks has no possibility of succeeding on his claims.

## III. Conclusion

The court emphasizes that it does not, and need not, reach the merits of Marks's claims. Indeed, any one of Fujita's arguments could ultimately be correct. Nevertheless, the court cannot obviously conclude that Marks has no chance of recovery against Fujita. The limited record, in part a result of the limited discovery that has occurred, eschews any type of "summary inquiry" or an "obvious" determination appropriate for application of the fraudulent joinder rule.

As Fujita is a non-diverse defendant, and the court declines to apply fraudulent joinder, **IT IS HEREBY ORDERED** that Fujita's Motion to Dismiss is **DENIED** and this matter be **REMANDED** to Superior Court of Guam.

**SO ORDERED**.




**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Mar 31, 2021**